IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01552-PAB

PATRICIA DAHL,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER**

    This matter is before the Court on plaintiff Patricia Dahl's complaint [Docket No. 1], filed on June 15, 2012. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

    On May 18, 2009, plaintiff applied for disability benefits under Title II and Title XVI of the Act. R. at 18. Plaintiff alleged that she had been disabled since February 1, 2009. *Id*. After an initial administrative denial of her claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on December 6, 2010. *Id*. On January 11,

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

2011, the ALJ issued a decision denying plaintiff's claim. *Id*. at 25.

The ALJ found that plaintiff had the following severe impairments: "chronic obstructive pulmonary disease ("COPD") and obesity." R. at 20. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 21, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). The claimant can lift ten pounds frequently and 20 pounds occasionally. The claimant may only sit for six hours of an eight-hour workday and stand/walk for six hours in an eight-hour workday. The claimant can occasionally climb stairs, but must never climb ladders. She should avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dust and other similar irritants.

R. at 21. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 24.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred at step three of his analysis and in assessing her RFC.  Docket No. 14.

The relevant facts are as follows.  On February 26, 2009, plaintiff first sought treatment from physician Hai Bui for her cough and shortness of breath; she continued to see Dr. Bui on a weekly basis through April 9, 2009 for follow-up treatment.  R. at 227-42.  At her initial examination, Dr. Bui measured her FEV1[2] values at between 1.13 and 1.46 and found that her "lung age" was 83 years.  R. at 244.  He subsequently diagnosed plaintiff with COPD,  prescribed several medications to treat it, including liquid oxygen, and prescribed treatment to assist with smoking cessation.  R. at 227-42.

On April 10, 2009, plaintiff was examined by physician Joshua Solomon, a pulmonologist.  R. at 248.  Plaintiff told Dr. Solomon that she had gone to the emergency room five times over the past four years with complaints of shortness of breath and increased heart rate, but was discharged without treatment each time.  *Id*.  Dr. Solomon diagnosed plaintiff with polycythemia,[3] secondary to chronic hypoxia,[4] which was being treated with "both daytime and nighttime oxygen" as per Dr. Bui's prescription.  R. at 251.  He found that she was audibly wheezing, had shortness of

---

[2] "FEV1" is a measure of forced expiratory volume at one-second intervals.  Stedmans Medical Dictionary 147880 (27th ed. 2000).

[3] Polycythemia is an abnormal increase in the number of red blood cells.  Stedmans Medical Dictionary 325030 (27th ed. 2000).  It may develop as a secondary condition in individuals with decreased blood oxygen levels due to pulmonary emphysema.  *Id*.

[4] "Hypoxia" refers to low levels of oxygen in inspired gases, arterial blood, or tissue.  Stedmans Medical Dictionary 196860 (27th ed. 2000).

breath after speaking seven or eight words, and had an FEV1 value of 1.2, or 43% of the predicted value. R. at 250.

On April 27, 2009, plaintiff returned to see Dr. Solomon for a follow-up appointment and reported "significant improvement in her breathing." R. at 245. Tests indicated she had 85% oxygen saturation[5] on room air. R. at 246. Dr. Solomon diagnosed her with Stage III or Stage IV COPD, complicated by hypoxemia.[6] R. at 247. He noted that he had "discussed with her also the importance of using her oxygen" and that he would "follow this up on [the] next visit to look for resolution of this polycythemia." R. at 246.

On August 6, 2009, plaintiff saw Dr. Solomon for a follow-up appointment and reported that she had lost her insurance coverage and had not been taking any of her medications, except for oxygen, for the past two months. R. at 292. Dr. Solomon measured her oxygen saturation level at 98% and restarted her medications, but did not prescribe her oxygen. R. at 293. At a follow-up appointment on August 27, 2009, Dr. Solomon noted that plaintiff had "gotten her insurance squared away." R. at 289. Her oxygen saturation was at 93%. R. at 290.

In July 2009, state agency reviewing pulmonologist Michael Canham opined that plaintiff did not meet any of the listed impairments. R. at 218. He further stated that he did not have all of plaintiff's medical records and suggested obtaining the notes from Dr.

---

[5] "Oxygen saturation" refers to the proportion of hemoglobin binding sites on red cells that are bound to oxygen molecules. 2 Attorneys Medical Deskbook § 24:20 (4th ed. 2012). A normal result is saturation of 95% or above. *Id*.

[6] "Hypoxemia" refers to low oxygen levels in arterial blood. Stedmans Medical Dictionary 196850 (27th ed. 2000).

Solomon's examination of plaintiff to permit a more thorough review. *Id*. An unsigned reviewing opinion from August 2009[7] states that plaintiff's blood gas levels did not meet any of the listed impairments and did not "qualify for continuous supplemental oxygen." R. at 221. The opinion further states that plaintiff's lung capacity indicated a moderate impairment, that her diffusing capacity was "mildly reduced," and that she did not have "significant emphysema or oxygen desaturation with exertion." *Id*. The opinion indicates that plaintiff can stand, walk, or sit for six hours in an eight-hour workday, with normal breaks. R. at 220.

On August 27, 2009, Dr. Solomon stated that plaintiff had "fairly severe chronic obstructive pulmonary disease at her age of 48" and that he had discussed with her "the severity of her disease given her young age, and possibilities of surgical treatment in the future if she is able to quit smoking." R. at 290. Dr. Solomon's notes indicate that plaintiff ceased smoking between September 30, 2009 and November 5, 2009. R. at 283, 286.

Following a January 13, 2010 follow-up appointment, Dr. Solomon stated that plaintiff "has done quite well since our last visit," but noted that "[s]he is not leaving her house very much because she is still unable to get traveling oxygen because of insurance." R. at 280. Her blood oxygen saturation was at 95%. R. at 281. A March

---

[7] The ALJ did not address whether the absence of a signature affected the weight accorded this opinion, but did cite it in support of his finding that plaintiff did not require supplemental oxygen. R. at 23. The Commissioner asserts that the physician who filled out the August 2009 assessment indicated the same specialty (pulmonology) as Dr. Canham, and thus "it appears" that Dr. Canham completed both assessments. Docket No. 15 at 5 n.8. For the purpose of this Order, the Court need not resolve the issue of which state agency reviewing physician authored the opinion.

8, 2010 oxygen therapy assessment indicates that plaintiff had blood oxygen saturation levels between 91% and 95% during and after walking for six minutes. R. at 298.

On March 8, 2010, Dr. Solomon completed a Medical Assessment of Ability to do Work-Related Activities for plaintiff, in which he opined that she could lift and carry up to twenty pounds occasionally; sit for five hours without interruption and for 7.5 hours total in an eight-hour workday; stand for one hour without interruption and for four hours total in an eight-hour workday; and walk for ten minutes without interruption and for one hour total in an eight-hour workday. R. at 266.

On March 9, 2010, Dr. Solomon completed a pulmonary RFC questionnaire for plaintiff, in which he opined that she could lift and carry up to ten pounds occasionally; sit for two hours and forty-five minutes without interruption and for four hours total in an eight-hour day; and stand or walk for one hour without interruption and for less than two hours in an eight-hour day. R. at 273-74. He further opined that plaintiff would need to take one or two unscheduled breaks of thirty minutes each during an eight-hour workday and was likely to be absent from work more than three times per month. R. at 273-74.

On April 21, 2010, Dr. Solomon found that plaintiff was "doing well on inhalers," but still had "significant exercise-induced shortness of breath," although she was continuing to exercise and abstain from smoking. R. at 278. Dr. Solomon further found that plaintiff had a relapse in respiratory bronchiolitis and "subtle improvement in her six-minute walk nadir oxygen saturation." *Id*. Spirometry data for that day showed plaintiff had an FEV1 level of 1.45, which was 53% of the predicted level. *Id*. Plaintiff told Dr. Solomon that she had gone to the emergency room the previous week for pain

in her rib cage, burning, and difficulty swallowing and was given a chest X-ray and an electrocardiogram, but discharged without any medication. R. at 277. His notes indicate that plaintiff "den[ied] regular heartburn symptoms." *Id*.

At the administrative hearing, plaintiff testified that she does her own cooking but needs help from friends or neighbors with laundry and grocery shopping. R. at 36-37. She also testified that she needs to use liquid oxygen twenty-four hours a day. R. at 46-47. The VE testified that a claimant with the RFC found by the ALJ would be able to perform several jobs in the local and national economy. R. at 52-53. In response to a question from plaintiff's attorney, the VE testified that a claimant with the additional limitations of being unable to sit for more than four hours, unable to stand or walk for more than two hours, requiring one to two unscheduled breaks of thirty minutes per day, and missing more than three days of work per month would not be able to perform any existing work. R. at 54. The ALJ then asked whether plaintiff supplied the answers that Dr. Solomon indicated in the RFC questionnaire he filled out. R. at 55-56 ("So the answers to these questions are your answers? That he asked?"). Plaintiff responded in the affirmative, stating that Dr. Solomon "filled out the paperwork . . . on my answers." R. at 55.

At step two of his analysis, the ALJ found that plaintiff's only severe impairments were obesity and COPD. R. at 20. He noted that plaintiff had also alleged impairments from sleep apnea, depression, a breast lump, insomnia, back pain, polycythemia, dizziness, hypoxemia, difficulty swallowing, and spirometry. *Id*. at 21. The ALJ found that these impairments were not severe based on evidence in the record, including normal test results and plaintiff's own denials of certain symptoms:

> Specifically, the claimant was scheduled to receive a CPAP for treatment of sleep apnea. However, she testified that she was not using the device. The claimant had a health and behavior evaluation for depression on April 30, 2009, which indicated only mild depression and anxiety. The breast lump was reportedly benign on April 10, 2009. The claimant denied dizziness on the same date. The claimant's April 10, 2009 spirometry report reported "acceptable test results" . . . . On August 11, 2009, the claimant's diffusing capacity was within normal limits at 77% . . . . Her spirometry was "stable" on January 13, 2010. The claimant's back pain was likely due to coughing and an unrelated back strain. The claimant was given Ibuprofen and "a few Loratab" for pain. The claimant had only moderate esophageal dysmotility . . . . The claimant was advised to take single sips of thin liquid, avoiding consecutive sips.

*Id*.

At step three of his analysis, the ALJ stated that "the claimant does not meet or equal the requirements set forth in the Social Security Listing of Impairments," noting that obesity is not a listed impairment. R. at 21. In assessing plaintiff's RFC, the ALJ stated that:

> The claimant reported no hospitalizations for her impairment. . . . In addition, once the claimant reduced her smoking habits, her symptoms appeared to improve. Further, the claimant alleged that she required the use of supplemental oxygen. However, this is inconsistent with the medical records. Dr. Hibue [sic] prescribed the oxygen although he is not a pulmonologist. Dr. Hibue then referred the claimant to the National Jewish Health Center for further assessment. In April of 2009, the claimant had blood gas levels that did not qualify for continuous supplemental oxygen and her baseline FEV1 improved.

R. at 23 (internal citations omitted). The ALJ further explained that he accorded "little weight" to Dr. Solomon's opinion regarding plaintiff's ability to sit, stand, and maintain her attendance at work. *Id*. The ALJ stated that:

> The evidence does not support Dr. Solomon's opinions that the claimant's ability to sit less is limited. The evidence also did not suggest that the claimant required 30-minute rest breaks or needed to miss several days from work. As mentioned, the claimant has not had any hospitalizations for her symptoms or major medications or treatments that preclude work.

*Id*. The ALJ went on to state that "[g]reat weight is assigned to the State agency's physical assessment that the claimant could engage in light work" because "[t]his opinion is generally consistent with the evidence of record." *Id*. The ALJ's determination of plaintiff's RFC is consistent with the unsigned opinion of the state reviewing pulmonologist. *Compare* R. at 21 *with* R. at 220. It rejects the limitations on standing and walking recommended by Dr. Solomon in both his reports, as well as the limitations on plaintiff's work attendance. *Compare* R. at 21 *with* R. at 265-66, 273-74. However, it is not wholly inconsistent with the limitations on lifting and sitting recommended by Dr. Solomon in his March 8, 2010 assessment. *Compare* R. at 21 *with* R. at 265-66.

Plaintiff contends that the ALJ erred at step two by failing to explain his conclusion that plaintiff's impairments do not meet the listed impairments. Docket No. 14 at 16-18. In addition, she asserts the ALJ erred in determining her RFC because he (1) accorded insufficient weight to Dr. Solomon's opinion, especially his opinion regarding the use of liquid oxygen; (2) improperly discounted plaintiff's subjective testimony of impairment; and (3) failed to consider the combined effects of her severe and non-severe impairments. Docket No. 14 at 14-16, 18-22.

### 1. Residual Functional Capacity

Plaintiff contends that the ALJ improperly discounted Dr. Solomon's opinion of plaintiff's physical limitations based on the ALJ's belief that Dr. Solomon relied on plaintiff's subjective reports and that the ALJ failed to engage in a reasoned application of the relevant factors. Docket No. 14 at 14-16. The Commissioner counters that the

ALJ permissibly based his conclusion on inconsistencies between Dr. Solomon's opinion and the objective medical evidence. Docket No. 15 at 9-16.

The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique perspective derived from a treating relationship. 20 C.F.R. § 404.1527(c)(2). Thus, an ALJ must accord controlling weight to the opinion of a treating physician where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Id*. An ALJ may not wholly reject the opinion of a treating physician absent "specific, legitimate reasons" for doing so. *Reyes v. Bowen*, 845 F.2d 242, 244-45 (10th Cir. 1988). The Tenth Circuit requires that an ALJ's decision be sufficiently specific "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Furthermore, the opinion of a treating physician merits some measure of deference even if it is not controlling and must be evaluated according to the factors listed in 20 C.F.R. § 404.1527(c)(2), including the length and nature of the treating relationship, the supportability and consistency of the opinion, and the treating provider's medical specialization. 20 C.F.R. § 404.1527(c)(2)(i)-(ii). Where the opinion of a treating physician is in conflict with that of a consultative physician, the "consultative physician's report should be examined to see if it outweighs the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 n.13 (10th Cir. 2004) (internal citations omitted).

Here, the ALJ stated that Dr. Solomon's opinion was entitled to little weight because it was not well supported by the objective medical evidence and was inconsistent with other substantial evidence in the record. R. at 23. However, the only evidence that the ALJ cited in support of this conclusion was that plaintiff had not been hospitalized for her impairment and had not been prescribed medications that would interfere with her work. *Id*. Even assuming that this analysis is sufficient to support the ALJ's decision to accord Dr. Solomon's opinion less than controlling weight, it is not sufficient for the Court to conclude that the ALJ applied the factors in 20 C.F.R. § 404.1527(c)(2) in determining how much weight to accord Dr. Solomon's opinion regarding plaintiff's ability to sit, stand, walk, lift, and carry. Nor is there any evidence that the ALJ "examined" the reviewing physician's report "to see if it outweighs the treating physician's report, not the other way around." *See Hamlin*, 365 F.3d at 1220 n.13. On the contrary, the ALJ's opinion suggests that he relied on the report of a reviewing physician in discounting Dr. Solomon's opinion insofar as he stated that plaintiff's blood gas levels did not necessitate oxygen without addressing other medical evidence relied upon by Dr. Solomon. *Compare* R. at 23 ("In April of 2009, the claimant had blood gas levels that did not qualify for continuous supplemental oxygen and her baseline FEV1 improved.") *with* R. at 221.

The Commissioner suggests a number of possible explanations for the ALJ's decision. *See* Docket No. 15 at 12-15. However, such post hoc rationales will not suffice in the absence of a sufficiently detailed decision. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the

Case 1:12-cv-01552-PAB Document 20 Filed 03/12/14 USDC Colorado Page 14 of 17

ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). "In the absence of these reasons, [the Court] cannot determine if there is relevant evidence that adequately supports the ALJ's conclusion or if the ALJ even applied the proper legal standard to arrive at that conclusion." *Andersen v. Astrue*, 319 F. App'x 712, 717 (10th Cir. 2009) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

The Commissioner also argues that any error in the ALJ's consideration of Dr. Solomon's opinion was harmless because the opinion "contained a functional assessment substantially similar to Dr. Canham's functional assessment . . . an assessment the ALJ gave 'great weight' to because it was more consistent with the evidence in the record." Docket No. 15 at 12 n.12. In the administrative context, harmless error analysis is appropriate "where, based on material the ALJ did at least consider (just not properly), [a reviewing court can] confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The ALJ rejected the limitations found by Dr. Solomon–namely, that plaintiff can sit for less than four hours in an eight-hour workday, stand for less than two hours in an eight-hour workday, needs to take unscheduled breaks during the workday, and needs to miss more than three days per month of work–that were not found by Dr. Canham. *See* R. at 23. Plaintiff objects, in part, to the rejection of these limitations. *See* Docket No. 14 at 16. In light of the key differences between Dr. Solomon's and Dr. Canham's opinions, and the ALJ's failure to explain the basis for the weight accorded these opinions, the Court cannot conclude that no reasonable factfinder could have resolved

14

the matter otherwise.  *See Allen*, 357 F.3d at 1145.

As the Court cannot determine whether the ALJ applied the correct legal standard and relied on substantial evidence in giving greater weight to the state agency physician's opinion than to Dr. Solomon's opinions, remand is warranted.

### *2. Listed Impairments*

Plaintiff argues that the ALJ erred at step three in failing to consider whether the combined effect of plaintiff's COPD and obesity met or equaled one of the listed impairments.  Docket No. 14 at 17-18.  The Commissioner counters that the ALJ's finding is supported by substantial evidence because plaintiff's blood gas levels did not meet the listed criteria for COPD and because the state agency report included a "detailed comparison of her diagnostic testing data and the listing requirements, as well as her obesity."  Docket No. 15 at 16-17.

The record indicates that plaintiff's FEV1 was measured at 1.13 to 1.46 in February 2009, R. at 244; 1.2 in April 2009, R. at 250; 1.65 in January 2010, R. at 281; and 1.45 in April 2010, R. at 278.  The state agency report reviews plaintiff's blood gas levels and then concludes that, "because none of the objective data meets listing level, her symptoms and her obesity are considered and given the greatest weight in dropping this RFC."  R. at 221.  It further states that "the greatest weight is given to the combination of her pulmonary physiology.  She has not required oxygen.  Her FEV1 is 61 percent of predicted.  Her symptoms are considered in reducing the RFC."  R. at 224.  With respect to step three of his analysis, the ALJ's decision states only that plaintiff does not meet one of the listed impairments, noting that obesity is not a listed impairment.  R. at 21.

The listing for COPD requires a claimant of plaintiff's height to have an FEV1 of 1.15 or less.  20 C.F.R. Part 404, Subpt. P, App. 1 at § A(3.02)(A).  The Social Security regulations pertaining to respiratory impairments recognize that the "combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately" and, thus, that an ALJ "must consider any additional and cumulative effects of obesity" when "determining whether an individual with obesity has a listing-level impairment or combination of impairments."  *Id*. at § A(3.00)(I).

It is undisputed that, with the exception of one measurement taken by Dr. Bui in February 2009, plaintiff does not meet the listing for COPD.  *See* R. at 244.  However, the ALJ did not address the cumulative effects of plaintiff's obesity, which he found to be a severe impairment, on her COPD.  *See* R. at 21.  The Commissioner's argument on this point is unavailing, as the state reviewing physician did not discuss plaintiff's obesity–or its interaction with her COPD–in any detail and, in any event, the ALJ did not refer to the state physician's opinion in arriving at his step three determination.  *See* R. at 21, 221, 224.  Moreover, the remainder of the ALJ's decision does not "provide detailed findings . . . that confirm rejection of the listings in a manner readily reviewable" and obviate the need for a detailed discussion at step three.  *See Fischer-Ross*, 431 F.3d at 734.  The ALJ's RFC determination does not discuss plaintiff's obesity or its impact on her functional abilities.  *See* R. at 21-23.  Accordingly, the Court cannot determine whether the ALJ complied with the Social Security regulations in evaluating plaintiff's impairments in combination.

On remand, the ALJ must provide sufficient information to permit review of his determination at step three.

## III.  CONCLUSION

The Court must remand this case so that the ALJ can weigh Dr. Solomon's opinion according to the relevant factors listed in 20 C.F.R. § 404.1527(c)(2) and consider whether the combined effect of plaintiff's obesity and COPD equal a listed impairment, in addition to considering the rest of the evidence.  The Court need not consider plaintiff's additional arguments that the ALJ erred in assessing her credibility and in considering her non-severe impairments.  See Docket No. 14 at 18-22.  Wherefore, it is

**ORDERED** that the decision of the Commissioner that plaintiff Patricia Dahl was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED March 12, 2014.

                                                  BY THE COURT:

                                                  s/Philip A. Brimmer
                                                  PHILIP A. BRIMMER
                                                  United States District Judge